with Ash v. Johnston and Bombard 21-1941. Mr. Burnett. Thank you. May it please the court. I don't think there's any real dispute that the district court failed to provide an adequate explanation for its decision to deny and leave to amend. As a result, I think the main questions are, under what circumstances should the circuit court remand to the district court? In essence, I think there are four main issues that the court needs to deal with. The religion claim, the double jeopardy claim, the jury instructions in Nurse D. Macy and whether there were adequate allegations against Nurse D. Macy. I take it there's no question it was untimely. Well, the one argument I made as to whether it was untimely or not is whether you should liberally construe his motions to compel as also being a motion for an extension of time. If you liberally construed his motion to compel to include a request to extend the time, then you would deem it timely. No, I mean, not the motion to compel, the motion to amend, isn't it clearly untimely? It was past the date that was set in the scheduling. Yeah, well, that's sort of the definition of untimely. All right, so when it's untimely, what is it you say the district court must do? Well, the district court should, well, I think the district court should have said that the motion to compel, first off, was liberally construed as a motion for extension of time, and then it should have looked at whether the reasons for the delay met the standard for diligence. And in this case, I think it does, because he was looking for information that was necessary to amend his claim. And the defendants in this case, there's no dispute, did not timely respond to the discovery request and continue to have disputes with him about discovery during the period of time he was seeking the information. Well, I can see that when a fellow comes along, sort of near the trial and says, Judge, I want to amend, and the judge says, well, we're awfully close to the trial. I think you're too late. And we seem to require explanation. But do we do that when there's a set time limit that has been overstepped? Well, the solicitor general said what we look at is whether there was good cause or not. I've said I've analyzed it under any standard, and I think under any standard, there is sufficient reason in here to allow a pro se plaintiff to have lead to amend. As this court has said, we should give a pro se plaintiff every opportunity in to make a claim, including in situations where they're seeking lead to amend. And it is not. Is it clear we've required an explanation when the when the plaintiff overstepped a fixed time limit? It's clear I could not find a specific case about lead to amend, but it's clear that this court requires explanation when the court exercises its discretion and when this court was looking at lead to amend and evaluating diligence, it was certainly exercising discretion. So there needs to be a sufficient basis in the appellate record for the for the conclusion that there was that it was not appropriate for lead to amend. Was there any question about the date of January 13th, 2019 as the deadline? There's no dispute about and no question about your client's knowledge of that. There's no question in the record about that. And then he doesn't file for another two and a half months, right? That's correct. So under what circumstances do we require when the date is fixed, it's clear, there's no ambiguity about it, a district court to provide further explanation because when somebody misses a deadline, the question then becomes whether they were diligent in trying to meet the deadline. If somebody is is analyzing whether there was diligence and not in trying to meet the deadline, that's an exercise of discretion. And this court has repeatedly held whenever there's an exercise of discretion in the district court, there needs to be an explanation as to how that discretion is being exercised. In this case, all the district court said was untimely. There is no information about what we can we can affirm on any basis. Right. So we can we can based on the record, figure out what the explanation would be. Would you agree with that? What this court has said in those discretion cases is we need to understand what the district court, because the district courts has a better feeling for the facts. Well, it's pretty clear on the record that it was a fixed date, right? Correct. Client failed to meet that date. Correct. And that was why it was deemed untimely and why the rest resulted. And then I think it was up to your client to provide an explanation for the untimeliness. My client did provide explanations for the untimeliness. Say that again, please. My client did provide explanations for the untimeliness through its motions to compel, which this court should read liberally. Right. My client went through and said, look, I'm looking for this information and they haven't provided it to us. And the attorney below conceded that they had not provided it. They got an extension of time. The judge granted the state an extension of time, even though they had they had done nothing. Right. It was simply a calendaring error for the state. And then, of course, is OK, that's fine. You know, no problem here. And then they continued to meet and confer. My client still didn't get what he needed. And so finally had to bring another motion to compel. And then an order was entered, you know, saying, let's give him the stuff. So there's plenty of the record to say that to say that my client diligently sought to get the records. And there's plenty of reasons to say that we're talking now about the amendment, aren't we? Correct. And so where were we as of the point that the judge fixed the January 19th date? And there was no further what what else did he have to do during that period of time or should he have done or needed to do for the two and a half months that he delayed moving for the amendment? Well, he had to get the records. He had to analyze them and he had to do the legal research to be able to say when did he I thought he had the records, but now needed to want to amend. So he needed the records. He needed to do the legal research while he was in jail, incarcerated.  And then you need to prepare the pleadings to be able to seek the leave to him, which he actually did. Right. He puts in there all the reasons why he needs to amend his religion. He explains his honestly held religious beliefs in his filing to the district court. And I mean, he actually did the work right at the end of the day after two and a half months. Right. But it's not easy to go and do this stuff while you're in jail. The problem is with the pro se, particularly an incarcerated pro se, we offer an awful lot of leniency in deciding what claims are brought and interpreting complaints and that kind of thing. But the deadlines apply equally to everyone as far as I can tell. I mean, we don't unless there's a compelling reason, which he never advanced when he filed. Well, I think he did. I think it's in his pleadings.  He it's in his motion to compel. He's saying to you, look, I need these records. And when you read these motions to compel, you should read them liberally to also say, hey, I also need more time to amend my complaint. And the reason I need more time is because I haven't gotten the information in the motion to compel. Does he say I need more time? No, no. But he's obviously seeking the records and that should be liberally read to say, I also need time to review them, do the legal research and draft a pleading. So now I have a better understanding of the argument. You're really saying in the motion to compel, he provided his reasons for needing more time and first untimely filing. Right. He provides that information. It's I mean, he's not particularly, you know, great at the writing part of it, but he is saying I need this information and I need it to make out my claims. OK, he eventually got the material, right? He did. How far in advance of the amendment deadline did he get the information? I believe it was pretty close to the two and a half months. So he hit I mean, he probably had about two and a half months to draft the pleading, do the research and then get it out to the district court. It was there was not a lot of gap in time between the amendment time and the time he actually got the information. And that's what I'm trying to understand. Yeah, I think it was maybe a couple of weeks. I'll double check. But I think it was maybe a couple of weeks. He didn't get the disclosure until two weeks before the deadline. I believe that's right. I'm not 100 percent positive. But let's if you're not going to grant him leave to amend, then you have to go back and look at the the actual decision of the district court dismissing his religion claim and not reading into it a double jeopardy claim, because even on the face of the complaint, right, he set forward a religion claim that the district court erroneously dismissed. And the reason the district court erroneously dismissed the religion claim on this complaint was that the district court applied the wrong legal test. The district court applied the substantial burden test, which in the interim, this court has overruled, right? It says no longer do you have to have a substantial burden to make out a religion claim. So on the face of the decision dismissing the religion claim, you have you would have to reverse on that ground as well. Leaving that aside just for a minute. Sure. There was a jury charge giving the binary choice, sadistic and malicious versus good faith. Correct. Right? And the jury did not find they did not find sadistic and malicious. They found good faith.  As far as the excessive force was concerned, right? Correct. So if there's good faith and and no sadistic and malicious and it's found that the fourth that he loses on the he loses on the excessive force claim. How can you have a further claim for retaliation or religious discrimination and the like free exercise when the jury has already found that the officers were justified in the force that they used? Well, there's two. There's two reasons. One, the jury didn't find that he that he exercised good faith or the officers exercise good faith. They didn't. Wasn't that before the jury? Correct me if I'm wrong. I may be wrong. I thought there was a binary choice given to the jury. Correct. Faith was sadistic and malicious and they found good faith. They had to have found good faith. Well, that's that's where I differ with you, because when you say when you say sadistic and malicious, right? The jury has to find both to find bad faith. Right. Let's say bad faith or good faith versus good faith. Correct. They they they found good faith. I don't believe that's correct under the jury instruction, because if they looked at the bad faith part of it and said, well, I have to find both that it was malicious and sadistic. And they said, well, it was malicious, but it wasn't sadistic. Therefore, I have to go back to good faith. That would be erroneous as a matter of law. The Blyth Court tells you that, right? The Blyth Court tells you that malicious and sadistic are just examples of bad faith. There are other ways to be in bad faith. But of course, the jury didn't know that because of the jury instruction. The jury instruction said you need to find to find bad faith. You need to find both malicious and sadistic. And if the jury is following the instructions, they would conclude, no, this wasn't bad faith because it wasn't sadistic. It may have been malicious, but it wasn't sadistic. And other circuits have correctly discerned that problem with the language in the Supreme Court. This would be a wonderful argument, I think, had the precise jury instruction not been invited by your client. Well, it was not invited by my client. Well, did he propose it? His lawyers did. He told his lawyers to object, right? That's a separate argument.  He told his lawyers to object. So assume that the lawyer and the client are the same for our purposes. They proposed the jury instruction. Is that right? That's correct. So you've reserved some time for rebuttal, Mr. Byrne, and thank you. We'll hear from Mr. Wackengard then. Oh, sure. Of course. Just quickly on the motion to amend. Did his motion to amend tell the court, I need more time because I just got the discovery two weeks ago? The motion did not say those particular words. In the motion to amend, he didn't give the district judge a reason for noncompliance with the deadline. Well, so his motion to amend is on page 30. He says, quote, I have all the grievances, complaints, and letters from the chaplain and deputy of programs to prove and show that they denied me religious services while saying that they were none when there was only and only white inmates were allowed to go. That is a reference to the records I believe he was seeking in discovery, right? So if you look at that and you read it liberally, he would say, now I have the records. Now I want to amend. If you're reading it liberally, does he say the precise words, I was delayed in bringing it? What's the date of that particular statement? It says April 3rd, 2019. Thank you. Thank you very much, Mr. Wagner. May it please the court, Doug Wagner on behalf of the Appalese. This excessive force game proceeded through the screening stage where the district court correctly dismissed the balance of plaintiff's claims but for the excessive force claim. Through the six months that the scheduling order set for the plaintiff to amend, there was no timely motion to amend and so the district court was well within its discretion to deny the motion three months later. And through a jury trial where the substantive excessive force instruction as proposed by plaintiff was given directly to the jury and the jury found for defendants. So this court should not review any invited error related to the instructions. The jury verdict should be affirmed in full. Now the plaintiff's counsel has spent most of the time talking about amendment. So I will start with amendment and then I will proceed to the jury instructions if there is time. We certainly do not concede that the district court's order here was insufficient and that there should be any remand. As has been pointed out today, this court may affirm on any basis in the record and there's been some factual confusion that I'd like to clear up. In the April 3rd motion that was just discussed, plaintiffs sought to add a religious services claim that was wholly new to this litigation. It was not the same as the free exercise claim that he pled in his complaint. In the complaint, he was arguing that this use of force was a burden on my exercise of religion. Yeah, but the judge didn't deny it because it was injecting a wholly new issue. That's true, Your Honor. What he said was it's untimely. That's true, Your Honor. But looking at the record, it's also clear that the reason now for diligence that plaintiff's counsel is giving, namely that he'd needed discovery, is vlied by multiple points of the record. Starting again with the April 3rd motion, he says, I have all the grievances I need and I have all the documents I need. Those documents were not in the initial disclosures, or at least I don't expect them to be, because they were not related to what had been pled in the original complaint. So saying I needed the discovery would not point at the claims that were actually pled that he would need to prove. He was not trying to fix the claims that already existed. He was trying to bring new claims. We also know that the reason he wanted to bring new claims is he had this other action concurrently in state court, and the reason in that April 3rd motion he gave was... So it's not that he gave no reasons for his untimely filing. Your point is that he gave the wrong reasons? My point is that looking at the record, this court can say that the reasons that he might have given were certainly insufficient. Well, isn't your point... I don't know if you've made this explicitly, but by virtue of the state case, wasn't the information... He knew of the claim that he had, and he could have brought it in the original complaint. That is certainly what I'm trying to drive at, Your Honor, so thank you for stating it better than I have. He is saying in the documents that he's filing, I have this other claim, I'd like to bring it. He mentions it actually in a filing that's earlier than the scheduling order. So a month before the scheduling order, he's saying, I have this other action, I'm being denied religious services, could I please bring this into the federal case? The issue is he never actually moves to amend. He never follows the local rules by proposing an amended complaint, and the district court had said in the screening order, look, if you want to amend, you have to supersede your entire complaint. And we know that he knew this because in his April 3rd motion, he says, I do not want to redo the whole case, I just want to append this new claim. So he had read the screening order's footnote, he knew that if he wanted to amend, he was going to have to draft a new complaint, but he didn't follow the rules that he had been told were applicable. Now, at what point did he have counsel at the trial? He had counsel appointed earlier than trial, but effectively for the trial. There were motions in Luminae and the sort, but not at any of the points that we have yet discussed did he have counsel. So the amendment and everything, there was no order at the time on April 3rd? On April 3rd, he did not have counsel. The last thing I would say on amendment is that plaintiff's counsel is pointing to discretionary decisions that require an in-depth explanation from the district court, such as sentencing, where there are multiple factors. There's many facts to consider. It's a really complex decision that this court needs to look at with care. As Your Honor, Judge Newman pointed out, this untimely decision, it's a simple decision. Is it timely? Was he diligent? No, he wasn't. This court can look at the record and determine that. Moving on to the jury instruction, this court should not even review the instruction because plaintiff proposed the exact words that were in the jury charge. Plaintiff's contention in his brief that this was not the sort of tactical decision that implicates invited error is incorrect. The parties here submit competing jury instructions. Obviously, the parties are trying to gain tactical advantage by shaping the words that the jury will hear. So to say that proposing a jury instruction is not seeking a tactical advantage is incorrect. We've cited cases in our brief, most specifically Henry against Dinell, that shows that this court routinely applies invited error to jury instructions that litigants propose. Even if this court does reach the jury instruction issue, it's certainly only reviewed for plain error. And plaintiff here has gotten nowhere near showing plain error. Perhaps the straightest arrow to get to this conclusion is the prejudice prong. There was no prejudice here. Plaintiff's argument is that the jury might have gotten confused because sadism might have had a pop culture sexual element in it. But the jury instruction here defined what sadism is. It didn't say sadism requires sexual gratification. And we trust that juries read the instructions, understand the instructions, and then apply the instructions. So there was no prejudice in the word sadism being confusing because it was defined. That's also true because the record of the trial shows that gratification and especially sexual gratification never came up. There was no questions about it. There was no testimony about it. There was no argument about it. The error here certainly was not plain. This instruction comes directly from the words of the Supreme Court. And this court has restated that standard over and over again. In our 28J letter, we cite a case called Barnes, Barnes against Rock from earlier this summer. If this court looks at this jury instruction in that case, it's very similar. It sets forth the binary choice. It uses the terms maliciously and sadistically. The circuit pattern instructions from across the country also use maliciously and sadistically. Some of them say maliciously or sadistically. But they all have the binary choice. They all set up the instruction as it either was good faith or it was not good faith. And the words that are contained in the not good faith, while they might vary a little circuit to circuit, certainly do not establish plain error. And the idea there is that the good faith establishes or sets the standard and says that the police were justified in doing what they did. Is that correct? That's certainly correct, Your Honor. Okay, so what was the problem in Hunley? In Hunley. So Hunley is distinguishable for two main reasons. The court just decided that fairly recently. That's right. It decided it on the heels of Barnes. So here the court can look to Barnes and Hunley as two recent decisions interpreting the Baskerville case, which is, of course, a published decision. The issue in Hunley was twofold. First, there was a potential adverse action other than the use of force that could support a retaliation claim. And so there was a strict search and the court said, we don't know what the jury would have thought. Of course, that case was about whether the jury verdicts were intellectually inconsistent. So it's not directly applicable. But more importantly, Your Honor, that case, the instruction did not have the binary choice. And so it just said, you must act maliciously and sadistically. And so that didn't give the jury the choice between either or. It left it open to the jury. And certainly, if the jury might not have found malicious malice and sadism, it could have found retaliatory intent. But that's not so here. In Plaintiff's 28J letter, they attempt to distinguish this line of cases by saying that the jury instruction here differs from that in Baskerville because the jury instruction specifically said that they could take the retaliatory or religious animus nature of the events into account for the bad faith. But that's actually true in this case, too. Not that the jury instruction specifically said it, but that the conduct that could have underlied any other claim related to this use of force was put squarely in front of the jury. The plaintiff testified that there were religious slurs uttered. There were racial slurs uttered. Then, in summation, the attorney for the plaintiff argued that those were very relevant in the jury's determination of excessive force. And of course, the jury then said, presumably discrediting that testimony, this was an exercise of good faith in this use of force. Just a word that... Oh, never mind. Let me just ask you, was there a special jury verdict here? It was a general verdict. I see my time has expired. There are no further questions. Thank you very much. Thank you. Mr. Byrne. You asked me a question about the timing on the leave to amend. I was incorrect. January 7th, my client filed his second motion to amend. That's document 23. The deadline ran on January 31st, January 13th. And then he filed his third motion to compel after the deadline had run. So he was continuing to have problems getting his information even after the deadline for the motion for leave had already expired. On the invited error, I think this court has said in Baskin that it has to be part of a strategic design. There's no way that anything related to the jury instructions was by strategic design. So it's not invited error. The other context in which this court needs to decide the jury instruction thing is involving the Baskerville case. I think the court can conclude as a matter under DeNovo review that the instruction is incorrect and then use that as a basis to say that that the jury did not have the proper instructions and therefore no inference can be drawn about the jury verdict based on the legal issues that the jury had to decide. Failing that, if the court doesn't grant leave to amend and send it back, it still has to resolve the legal issues of whether the original complaint stated claims for the religious discrimination in the double jeopardy. I think you have to reverse the court's decision because the court used the substantial burden test. But I also think that Mr. Ash provided very detailed information about his religion claim. And the information he provided was the original beating that occurred to him and that he self-censored because of that beating and was unable to profess his faith publicly. None of that stuff is addressed by the district court because the district court overlooked all of the stuff in his original complaint. In particular, the original complaint didn't deal with his denial of services, right? Well, it dealt with his public profession of faith. It dealt with his profession of faith and it also dealt with the slurs at the time of the force. Correct. I mean, you can't somehow read that as opening up or allowing the question of denial of religious services without an amendment. I think that's probably correct, Your Honor. But I think if you look at paragraph 29, he clearly cites the religious slurs that were issued while he was being beaten by the prison officials. And as this court has said in the Kravitz case, you can only have one, only one instance is necessary to create the discrimination that's necessary to state a claim under the religion. But I also think in closing, the court needs to look at the double jeopardy claim, which appears on the face of the complaint and the district court really didn't address it all. Thank you, Your Honor. Thank you very much. We'll reserve decision.